FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

2012 AUG 23 A 9:55

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., ) <br> a Virginia Corporation ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN INTERNET MORTGAGE, INC. ) <br> a California Corporation, ) <br> c/o Vincent Jude Kasperick, Registered Agent, ) <br> 4121 Camino Del Rio South ) <br> San Diego, California 92108 ) <br> ) <br> Defendant. ) | Civil Action No.: 3:12cv615 |

## COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, states the following for its Complaint against American Internet Mortgage, Inc. ("AIM"):

### PARTIES

1. SunTrust is a Virginia corporation with its principal place of business located in Richmond, Virginia.

2. AIM is a California corporation with its principal place of business located in San Diego, California.

### JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Jurisdiction and venue are proper in this Court because the parties entered into a Correspondent Loan Purchase Agreement, dated January 1, 2001 (the "Agreement"), that

contains a forum selection clause recognizing, for the purpose of any action to enforce the Agreement, that AIM submits to personal jurisdiction in the Commonwealth of Virginia and venue in this Court. This is an action to enforce the Agreement. A copy of the Agreement is attached as <u>Exhibit 1</u>.

## FACTUAL BACKGROUND

### The Correspondent Loan Purchase Agreement

5. On or about January 1, 2001, SunTrust and AIM entered into the Agreement pursuant to which AIM agreed to sell to SunTrust on a servicing released basis certain residential mortgage loans (the "Loans").

6. For each mortgage loan sold by AIM to SunTrust under the Agreement, AIM represented and warranted that:

> 17.1. <u>Validity of Obligation</u>. The Mortgage Loan documents have been duly executed by the Borrower and are valid and genuine and binding obligations of the Borrower. The Note is a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claims, defenses, setoffs or counterclaims. The Mortgage is valid and genuine, binding and enforceable and creates a lien of the priority agreed upon with Purchaser on the Secured Property, subject only to (a) liens for real estate taxes not yet due and payable, (b) special assessments not yet due and payable, or (c) covenants, conditions, easements or rights-of-way acceptable to Purchaser and satisfactory (i) under Freddie Mac/Fannie Mae Requirements or investor specific requirements, if the Mortgage Loan is a Conventional Mortgage Loan, or (ii) under GNMA Requirements, if the Mortgage Loan is a FHA/VA Mortgage Loan. The Mortgage is properly recorded in the land records of the appropriate jurisdiction, and no portion of the lien has been released or subordinated.
>
> . . .
>
> 17.3 <u>Eligibility</u>.
>
> > 17.3.1 <u>Eligibility of Conventional Mortgage Loans</u>. Each Conventional Mortgage Loan is in full compliance with this Agreement and the Manual including, without limitation, all underwriting and credit requirements.

. . .

17.11 <u>Acceptable Investment</u>. There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing than can reasonably be expected to: (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

7. Under the terms of the Agreement, AIM agreed to indemnify SunTrust in certain situations:

22. <u>Indemnity</u>. Seller hereby agrees to indemnify, defend and hold harmless Purchaser and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Seller of any representation, warranty, term, condition or obligation contained in or made pursuant to the Manual, this Agreement or any other agreement between Seller and Purchaser relating to the purchase of Mortgage Loans, (b) a failure by Seller to disclose any information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Seller to Purchaser, (d) any misrepresentation made by or through Seller to Purchaser concerning any Mortgage Loan, or (e) Seller's ownership of or actions with respect to any Mortgage Loan. This Section 22 shall survive any purchase, sale or transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the liquidation of the Mortgage Loan, or any termination of this Agreement.

**The Cady Loan**

8. On or about January 31, 2007, Douglas R. Cady and Tilda P. Cady (the "Cadys") obtained a mortgage loan through AIM in the amount of $307,800 (the "Cady Loan"). The Cady Loan was secured by a deed of trust on the real property located at 39161 Memory Drive, Murieta, California 92563 (the "Cady Property").

9. On or about February 14, 2007, AIM sold the Cady Loan to SunTrust.

3

10. On or about March 13, 2007, SunTrust sold the Cady Loan to the Federal Home Loan Mortgage Corporation ("Freddie Mac").

11. On or about November 29, 2010, JP Morgan Chase Bank, N.A. ("Chase"), on behalf of Freddie Mac, notified SunTrust of its duty to indemnify Freddie Mac for its losses related to the Cady Loan. Specifically, Freddie Mac determined that the Cadys failed to disclose two additional obligations: a $441,000.00 mortgage loan and an automobile loan with a monthly payment of nearly $740.00. The Cadys were required to disclose these loans on their Uniform Residential Loan Application but failed to do so, thereby making a material false representation of their financial condition to obtain the Cady Loan from AIM. This misrepresentation constituted a violation of the Agreement between SunTrust and AIM, under which AIM warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements.

12. On or about August 22, 2011, SunTrust paid $138,939.86 to Chase to make Freddie Mac whole for its losses related to the Cady Loan.

13. By letters dated November 16, 2011, January 12, 2012, and May 18, 2012, in accordance with Section 22 of the Agreement, SunTrust requested that AIM indemnify SunTrust for its losses associated with the Cady Loan. To date, AIM has failed to indemnify SunTrust.

14. As of August 6, 2012, SunTrust had incurred losses related to the Cady Loan totaling $137,833.60.

### The Matus Loan

15. On or about June 23, 2008, Arturo D. Matus, Jr. ("Matus") obtained a mortgage loan through AIM in the amount of $312,000.00 (the "Matus Loan"). The Matus Loan was

4

secured by a deed of trust on the real property located at 1230 Adams St., Salinas, California 93906 (the "Matus Property").

16. On or about July 3, 2008, AIM sold the Matus Loan to SunTrust.

17. On or about July 24, 2008, SunTrust sold the Matus Loan to the Federal National Mortgage Association ("Fannie Mae").

18. On or about September 30, 2011, Fannie Mae notified SunTrust of its duty to indemnify Fannie Mae for its losses related to the Matus Loan due to a rescission of mortgage insurance for the Matus Loan and an excessive debt-to-income ratio for Matus once omitted liabilities were properly included.

19. On or about December 2, 2011, SunTrust transferred $94,571.35 to Fannie Mae to make Fannie Mae whole for its losses related to the Matus Loan.

20. By letters dated February 13, 2012 and May 18, 2012, and in accordance with Sections 17.1, 17.3, 17.11 and 22 of the Agreement, SunTrust requested that AIM indemnify SunTrust for its losses associated with the Matus Loan. To date, AIM has failed to indemnify SunTrust.

21. As of August 6, 2012, SunTrust has incurred losses related to the Matus Loan totaling $95,101.35.

## COUNT I: BREACH OF CONTRACT

22. SunTrust incorporates the allegations set forth in paragraphs 1 through 21 above as if set forth fully herein.

23. The parties' Agreement required AIM, in selling the Loans to SunTrust, to represent and warrant that the Loans were duly executed by all borrowers; constituted "valid and genuine and binding obligations" of the Borrowers; were "valid and genuine, binding and

enforceable" negotiable instruments; and that the "[t]here [were] no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing that [could] reasonably be expected to: (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent . . . ."

24. SunTrust's review of the Cady and Matus Loans revealed that AIM had breached its obligations under the Agreement by selling to SunTrust loans that contained significant discrepancies, omissions, and flaws. As a result, SunTrust's losses, which were incurred as a result of making Freddie Mac and Fannie Mae whole for their losses, are eligible for indemnification under Section 22 of the Agreement.

25. Upon demand by SunTrust, in accordance with Section 22 of the Agreement, AIM further breached the Agreement by failing to indemnify SunTrust for claims associated with the Cady and Matus Loans.

26. Specifically, Section 22 of the Agreement requires AIM to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" AIM.

27. As a result of AIM's breach of the Agreement, SunTrust has been damaged to date in the amount of $232,934.95, reflecting losses incurred from the non-performance of the

Cady and Matus Loans, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

WHEREFORE, SunTrust Mortgage, Inc., by counsel, respectfully requests that the Court enter judgment and award damages against American Internet Mortgage, Inc. in the amount of $232,934.95, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

SUNTRUST MORTGAGE, INC.

By: /s/ Robert D. Perrow
Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

18739884_1.DOC